Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 303-0552
spencer@spencersheehan.com

United States District Court
Southern District of New York                  1:20-cv-02402-PGG-JLC

| Gilberto Cruz, Norma Melendez, individually and on behalf of all others similarly situated, |
|---|
| Plaintiffs, |
| - against - |
| D F Stauffer Biscuit Co Inc, |
| Defendant |

First Amended Class Action
Complaint

     Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

     1.    D F Stauffer Biscuit Co Inc ("defendant") manufactures, distributes, markets, labels and sells flat, brittle drop cookies, purporting to get their lemon taste only from lemons under its "Stauffer's" brand ("Product").

     2.    The Product is available to consumers from retail and online stores of third-parties and is sold bags of 14 OZ.

     3.    The relevant front label representations include "Lemon Snaps," "Quality Since 1871," a picture of the Product, freshly picked lemons and the brand, "Stauffer's."



4. The representations are misleading because the Product contains *de minimis* amount of lemon flavor from real lemons and what tastes like lemons is artificial flavor, not disclosed to consumers where they are expecting to see it – on the front of the Product.

5. Consumers have a hierarchy when it comes to the source of a food's flavor, which Defendant is aware of in labeling the Product.

6. The preference is for foods which get their taste from a characterizing food ingredient, i.e., lemon in lemon snaps.

7. Natural flavors "almost always cost[s] much more than an artificial flavor," so

2

companies and consumers are willing to pay higher prices for the real thing – lemon flavor from lemons as opposed to lemon flavor synthesized from oranges.[1]

8. "Artificial flavor" is any substance whose function is to impart flavor that is not derived from a natural source. *See* 21 C.F.R. 101.22(a)(1).

9. Nielsen has reported that 62% of consumers say they try to avoid artificial flavors.[2]

10. Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[3]

11. Label Insight determined that 76% of consumers avoid products with artificial flavors.[4]

12. Consumers want lemon taste in lemon flavored products to come from a real source, *i.e.*, from lemons from a lemon tree.

13. The label makes direct representations that the Product's primary recognizable flavor is from lemons, through the name, "Lemon Snaps" and the lemon images, such that lemon is reasonably understood by consumers to be its characterizing flavor. *See* 21 C.F.R. § 101.22(i).

14. The "LEMON" representation on the Product caused consumers, like Plaintiffs, to believe that the Product's lemon flavor comes predominantly, if not exclusively, from lemons.

15. Consumers are accustomed to products labeled "lemon," without any qualifiers such as "flavored," "artificial flavors" or "with other natural flavors," to mean that the lemon flavor comes only from lemons.

16. Plaintiffs reasonably believed that the "LEMON" representation on the front label of

---

[1] David Andrews, Synthetic ingredients in Natural Flavors and Natural Flavors in Artificial flavors, Environmental Working Group (EWG).
[2] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[3] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[4] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

3

the Product meant that the lemon flavor was from lemons and not from artificial flavors from non-lemon sources.

17. Unfortunately for consumers, the "LEMON" representation on the Product is false and misleading.

18. The Product's ingredient list designates "Natural and Artificial Flavors" instead of an exclusively lemon ingredient like "lemon extract" or "lemon oil."



**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, THIAMINE MONONITRATE [VITAMIN B1], RIBOFLAVIN [VITAMIN B2], FOLIC ACID), SUGAR, PALM OIL, HIGH FRUCTOSE CORN SYRUP, BAKING SODA (FOR LEAVENING), NATURAL AND ARTIFICIAL FLAVOR, SALT, SOY LECITHIN (AN EMULSIFER), CITRIC ACID, FD&C YELLOW #5.

19. Listing "natural and artificial flavor" means the flavor is not derived exclusively from lemons from non-lemon sources

20. The ingredient list fails to tell consumers or Plaintiffs that the lemon taste of the Product is predominantly from artificial lemon and citrus flavors and not real lemon from the lemon tree.

21. Reasonable consumers will not be suspicious of the Product not containing only lemon flavor from real lemons because qualifying terms on labels are commonplace, i.e., "flavored," "natural flavors."

4

22. Because lemon oil and/or lemon extract are not separately identified ingredients, it means that it is likely the Product contains no actual lemon ingredients.

23. According to flavor expert Bob Holmes, "If you were getting all the flavor depth of the lemon itself, the label would likely read 'lemon juice' or 'lemon oil,' not 'natural lemon flavor.'"

24. This is confirmed by scientific testing of the Product showing that the lemon flavoring of the Product does not come exclusively or predominantly from lemons.

25. This testing reveals that the probable amount of real lemon used in the Product is a trace or *de minimis* amount, which is not detectable by even advanced scientific means.

26. Though testing has shown the Product contains synthetic citral, the main flavor compound in lemons, citral is incapable of providing the "full richness of flavor found in the real lemon."[5]

27. Though the ingredient list in small print on the back panel reveals "Natural and Artificial Flavor," this fails to tell consumers that the amount of real lemon in the Product is barely detectable, if present at all.

28. The Product's front label does not state "contains some lemon" or "made with a drop of lemon," but includes the word "LEMON" an pictures of lemons without qualifying terms. *See* 21 C.F.R. § 101.22(i)(1)(ii) ("If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored.""); 21 C.F.R. § 101.22(i)(2) ("If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label

---

[5] Bob Holmes, Flavor: The science of our most neglected sense. WW Norton & Company, 2017.

shall be accompanied by the common or usual name(s) of the characterizing flavor…accompanied by the word(s) "artificial" or "artificially flavored"").

29. Defendant knows consumers will pay more for the Product because the front label only states "Lemon" and the ingredient listing of "Natural and Artificial Flavors" fails to inform consumers that the lemon taste is predominantly if not exclusively from synthetic citral and/or other imitation lemon flavors and not from actual lemons from the lemon tree.

30. Defendant's omission and failure to disclose the artificial lemon flavor on the front label is deceptive and misleading to consumers.

31. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

32. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

33. The value of the Product that plaintiffs purchased and consumed was materially less than its value as represented by defendant.

34. Had plaintiffs and class members known the truth, they would not have bought the Product or would have paid less for them.

35. As a result of the false and misleading labeling, the Product are sold at a premium price, approximately no less than $2.49 per 14 OZ,, excluding tax, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

36. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

37. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

38. Plaintiff Gilberto Cruz is a citizen of New York.

39. Defendant D F Stauffer Biscuit Co Inc, is a Pennsylvania corporation with a principal place of business in York, York County, Pennsylvania and is a citizen of Pennsylvania.

40. "Minimal diversity" exists because plaintiff Gilberto Cruz and defendant are citizens of different states.

41. Upon information and belief, sales of the Product in New York exceed $5 million per year, exclusive of interest and costs, and the aggregate amount in controversy exceeds $5 million per year.

42. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this District, *viz*, the decision of plaintiff to purchase the Product and the misleading representations and/or their recognition as such.

43. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

Parties

44. Plaintiff Gilberto Cruz is a citizen of New York, Bronx, Bronx County,

45. Plaintiff Norma Melendez is a citizen of New York, New York, New York County.

46. Defendant D F Stauffer Biscuit Co Inc is a Pennsylvania corporation with a principal

7

place of business in York, Pennsylvania, York County and is a citizen of Pennsylvania.

47. During the relevant statutes of limitations, plaintiffs purchased the Product within their district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

48. Plaintiff Gilberto Cruz purchased the Product on one or more occasions and at one or more locations, during the relevant period, at grocery stores near his residence in the Bronx during 2019 and 2020.

49. Plaintiff Norma Melendez purchased the Product on one or more occasions and at one or more locations, during the relevant period, at grocery stores near her residence in Manhattan, including Foodtown of East Harlem 2211 3rd Ave, New York, NY 10035, in January 2020 and April 2020.

50. Plaintiffs bought the Product at or exceeding the above-referenced price because they liked the product for its intended use and relied upon the front label claims to expect its taste only came from the identified front label ingredient of lemons and that the lemon taste was provided exclusively and/or predominantly by lemons.

51. Plaintiffs were deceived by and relied upon the Product's deceptive labeling.

52. Plaintiffs would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

53. The Product was worth less than what Plaintiffs paid for it and they would not have paid as much absent Defendant's false and misleading statements and omissions.

54. Plaintiffs intends to, seeks to, and will purchase the Product again when they can do so with the assurance that Product's labels are consistent with the Product's components.

Class Allegations

55. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

56. Plaintiffs seek class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

57. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

58. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

59. Plaintiffs are adequate representatives because their interests do not conflict with other members.

60. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

61. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62. Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

63. Plaintiffs seek class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350,
(Consumer Protection Statute)

64. Plaintiffs incorporate by reference all preceding paragraphs.

65. Plaintiffs and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product

type.

66. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

67. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

68. The amount and proportion of the characterizing component, lemon, has a material bearing on price and consumer acceptance of the Product and consumers do not expect synthetic lemon flavors where a product's flavor is designated "lemon," without more.

69. The ingredient list designation of "natural and artificial flavors" fails to tell consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

70. The front label gives the impression the Product has more real lemon than it does.

71. Plaintiffs relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

72. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

73. Plaintiffs incorporate by reference all preceding paragraphs.

74. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

75. The amount and proportion of the characterizing component, lemon, has a material bearing on price and consumer acceptance of the Product.

76. The ingredient list designation of "natural and artificial flavors" fails to tell

consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

77. The front label gives the impression the Product has more real lemon than it does and does not disclose the artificial flavors.

78. The ingredient list designation of "natural and artificial flavors" fails to tell consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

79. Defendant had a duty to disclose the artificial flavors and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

80. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

81. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

82. Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

83. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

84. Plaintiffs incorporate by reference all preceding paragraphs.

85. The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiffs and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

86. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

87. The amount and proportion of the characterizing component, lemon, has a material bearing on price and consumer acceptance of the Product

88. The amount and proportion of the characterizing component, lemon, has a material bearing on price and consumer acceptance of the Product.

89. The ingredient list designation of "natural and artificial flavors" fails to tell consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

90. The front label gives the impression the Product has more real lemon than it does and does not disclose the artificial flavors.

91. The ingredient list designation of "natural and artificial flavors" fails to tell consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

92. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

93. Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

94. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

95. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

96. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

97. Plaintiffs incorporate by reference all preceding paragraphs.

98. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

99. The amount and proportion of the characterizing component, lemon, has a material bearing on price and consumer acceptance of the Product.

100. The ingredient list designation of "natural and artificial flavors" fails to tell consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

101. The front label gives the impression the Product has more real lemon than it does and does not disclose the artificial flavors.

102. The ingredient list designation of "natural and artificial flavors" fails to tell consumers and plaintiffs that the Product contains no real lemon ingredient in sufficiently detectable amounts to provide the lemon taste.

103. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

104. Plaintiffs and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

105. Plaintiffs incorporate by reference all preceding paragraphs.

106. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiffs demand a jury trial on all issues.

**WHEREFORE**, Plaintiffs pray for judgment:

1. Declaring this a proper class action, certifying plaintiffs as representatives and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   September 24, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cuttermill Rd Ste 409

Great Neck NY 11021-3104  
Tel: (516) 303-0552  
Fax: (516) 234-7800  
*spencer@spencersheehan.com*  
E.D.N.Y. # SS-8533  
S.D.N.Y. # SS-2056

1:20-cv-02402-PGG-JLC
United States District Court
Southern District of New York

Gilberto Cruz, Norma Melendez, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

D F Stauffer Biscuit Co Inc,

Defendant

## First Amended Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 303-0552
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: September 24, 2020

                                                  /s/ Spencer Sheehan
                                                    Spencer Sheehan